ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY

*v.* THEODORE MAXFIELD COMPANY.

Opinion delivered February 28, 1910.

1. EMINENT DOMAIN—DAMAGES.—Where land is taken by a railroad company under the power of eminent domain, the measure of the owner's damages is the market value of the land actually taken and the depreciation of the market value of the remaining portion, without deducting the benefits that may accrue to the land by reason of construction of the railroad. (Page 137.)

2. SAME—HOW MARKET VALUE DETERMINED.—In determining the market value of land taken or damaged under the power of eminent domain the fact that the land is suburban property and available for town lots may be considered. (Page 137.)

3. SAME—EVIDENCE.—In determining the value of land taken under the power of eminent domain it is not error to permit witnesses to testify relative to the value of other and similar lands in the neighborhood, with explanations to show the difference between the market value of such lands. (Page 140.)

Appeal from Independence Circuit Court; *Charles Coffin,* Judge; affirmed.

*W. E. Hemingway, E. B. Kinsworthy, S. D. Campbell,* and *Jas. H. Stevenson,* for appellant.

1. The court did not properly instruct the jury as to the true measure of damages. 39 Ark. 167; 41 *Id.* 431; 2 Lewis, Em. Dom. § § 686, 689, 693. And the judgment is excessive.

2. Testimony as to the selling price of other lands, not similarly situated, was improperly admitted.

*Oldfield & Cole,* for appellee.

1. The tract in question having been platted into lots and blocks, and the free use of the streets dedicated to the use of the public, it was in fact an addition to the city of Batesville. 77 Ark. 177; 77 *Id.* 221; 9 Am. & Eng. Enc. Law 57, 59; 13 Cyc. 455 *et seq.* And appellee was therefore entitled to recover upon the basis of its value for such purposes. 41 Ark. 202; 49 *Id.* 381; 59 Wis. 364; 83 S. W. 584; 30 N. E. 298; 25 Atl. 635; 70 N. W. 162; 54 N. W. 557; 94 Pac. 259, s. c. 15 L. R. A. (N. S.) 676; 98 U. S. 403. The jury were properly instructed, therefore, as to the true measure of damages. Art.

12, § 9, Constitution; Kirby's Dig., § 2953; 39 Ark. 167; 44 *Id.* 258.

2. The testimony as to the selling price of similar lands in the immediate neighborhood was admissible. 49 Ark. 381; 18 N. W. 328; 3 N. W. 42; 1 Wigmore, Evidence, § 463 and note.

FRAUENTHAL, J. This was an action instituted by the appellant, a railroad corporation, for the condemnation of a right-of-way over certain land owned by the appellee and for the assessment of the damages thereto. The sole question involved in the case is as to the amount of the damages which the appellee should recover. The appellee owned a tract of land adjacent to the city of Batesville, and in 1899 it laid same out into lots and blocks as an addition to said city with the purpose of having it regularly annexed to said city at some future time; but it has never been so annexed. In September, 1899, it filed for record in the recorder's office of the county a deed of assurance to which was attached a plat of said addition, on which were indicated the various lots and blocks and also streets, the free use of which was granted to the public by said deed. Sometime after this, and long before the institution of this condemnation proceeding, it sold four of said lots by reference to said plat. The entire tract was enclosed, and portions of it had been cultivated by the appellee up to the date of these proceedings. The right-of-way varied in width, but it extended substantially one hundred feet in width across the entire tract. It extended across the lower portion of four blocks of the land, as same is now laid out and designated on said plat. The appellee alleged that the appellant took and appropriated for its right-of-way 23 of the lots, as indicated on said plat, which were of the value of $2,875, and that the construction of the railroad depreciated the value of the remaining land to the extent of $2,500; and it asked for judgment for its damages in the sum of $5,375. The appellant made a deposit and tender of $1,000, which it claimed was a full and fair assessment of the damages. The cause was tried by a jury, who, in addition to hearing a number of witnesses as to the value of the land, viewed the same.

A verdict was returned in favor of appellee for $2,325; and from the judgment rendered thereon the railroad company prosecutes this appeal.

The measure of the compensation which an owner is entitled to recover from a railroad corporation, which takes a portion of his land under the right of eminent domain for the construction of its railroad, is the market value of the land actually taken and the depreciation of the market value of the remaining portion. The chief question involved in this case is whether or not, in determining the value of the land, the fact can be taken into consideration that the land is suitable for division into lots and blocks and an addition to the adjacent city; and whether or not the witnesses can take into consideration the value of such lots and blocks in arriving at their opinion as to the market value of the land. It is contended by the appellant that the land, although thus laid out on the plat in lots and blocks, was actually enclosed and cultivated as a farm; and while one or two streets had been opened up along the sides of the tract, the streets were not actually opened up through the tract, and the lots were not actually at the institution of the suit indicated on the land; and it urges that the value of the lots as laid out on the plat should not be considered in arriving at the value of the tract of land. But the measure of the damages which the owner is entitled to recover for property taken for public use or depreciated by such use is the market value of it. This market value is determined, not solely by the uses to which the property has been put or is put at the time of the condemnation proceeding, but by all the purposes to which it is adapted. It may not be used at the time for any purpose that is profitable, but the use to which it may reasonably and probably be put profitably must necessarily be taken into consideration in determining the market value of the land.

In the case of *Little Rock & F. S. Ry. Co.* v. *McGehee,* 41 Ark. 202, this court quotes with approval the following language from the case of *Boom Company* v. *Patterson,* 98 U. S. 403: "In determining the value of land appropriated for public purposes the same considerations are to be regarded as in a sale of property between private parties. The inquiry in such cases must be, what is the property worth in the market, viewed not merely with reference to the uses to which it is at the time applied, but with reference to the uses to which it is plainly adapted; that is to say, what is it worth from its availability

for valuable uses? * * As a general thing, we should say that the compensation to the owner is to be estimated by reference to the uses for which the property is suitable, having regard to the existing business or wants of the community, or such as may be reasonably expected in the immediate future." In speaking of the character of testimony that is admissible in arriving at the value of land taken under condemnation proceedings, this court in *Little Rock Junction Ry.* v. *Woodruff,* 49 Ark. 381, said: "As a general guide to the range which the testimony should be allowed to assume, we think it safe to say that the land owner should be allowed to state, and have his witnesses to state, every fact concerning the property which he would naturally be disposed to adduce in order to place it in an advantageous light, if he were attempting to negotiate a sale of it to a private individual." The land involved in this proceeding was adjacent to the city of Batesville, and was available as an addition to that city, and was adaptable for being laid out into lots and blocks. Its proximity to a growing city and its availability for residence or business lots gave it an enhanced market value; and we think that its value, when divided into lots and blocks, might be taken into consideration in arriving at the market value of the land. This is in effect the value of the land for town lot purposes. In the case of *Sherman* v. *St Paul, M. & M. Ry. Co.,* 30 Minn. 227, that court says: "The evidence shows that the 80-acre tract in controversy, though at the time occupied as a farm, was situated in the vicinity of St. Paul, and near certain public institutions. It appeared, on the cross examination of witnesses, that, in forming their estimates of the market value of the land, they had considered its adaptability for suburban residences. If such fact affected its market value at the time in question, it would properly enter into consideration of the witnesses and the jury also in estimating such value." In the case of *Cincinnati & S. Ry. Co.* v. *Longworth,* 30 Ohio St. 108, the following language is used: "In offering testimony on this issue, the owner was not limited to any pre-existing use of the land. If it was of little value as a farm, or for common uses, and was of great value as mineral land or as a town site, that fact might be shown, though it had never been so used." In the case of *Montana Ry. Co.* v. *Warren,* 6 Mont. 275, it is said: "Respondent was allowed to

prove the value of the land for town lot purposes. He had the right to do so, whether he had built upon it or not. As we have seen, the question is not to what use the land had been put. The owner has a right to obtain the market value of the land, based upon its availability for the most valuable purposes for which it can be used, whether or not he so used it."

In the case of *Washburn* v. *Milwaukee & L. W. Rd. Co.,* 59 Wis. 364, it is said: "In the Washburn case the learned circuit judge instructed the jury, in substance, that if the present value of the lands taken was enhanced by reason of the adaptability thereof to some use to which they might be put in the future—as, for example, if land used only for farming purposes was so situated that it might be platted into city lots, and if its present value was thereby increased, such increased value was the proper basis for the assessment. We think this is a correct rule."

See also *South Park Commissioners* v. *Dunlevy,* 91 Ill. 49; *Hooker* v. *Montpelier & W. River Rd. Co.,* 62 Vt. 47; *Somerville & Easton Rd. Co.* v. *Doughty,* 22 N. J. L. 495; *Dickenson* v. *Fitchburg,* 13 Gray, 546; *Missouri, K. & T. Ry. Co.* v. *Roe,* 15 L. R. A. (N. S.) 679.

In the case at bar we are of opinion that the witnesses, in estimating the market value of the tract of land that was appropriated for the right-of-way, could take into consideration its value for the purposes of town lots, and that they and the jury could fix the value thereof upon that basis of the market value of such lots. And in like manner they could estimate the depreciation of the market value of the remainder of the tract of land. The compensation which the owner is entitled to receive from a railroad corporation exercising its right of eminent domain in condemning his property includes not only the value of the part taken but the diminished value of the residue. The damage or injury to the remainder of the land on account of the construction of the railroad is in effect the actual taking of that much of the remainder of the land, for the diminished market value of which the owner is entitled to full compensation. *St. Louis, Ark. & Tex. Rd. Co.* v. *Anderson,* 39 Ark. 167; *Little Rock, M. & T. R. Co.* v. *Allen,* 41 Ark. 431.

It is urged by appellant that, inasmuch as in this case

appellee is seeking compensation not only for the strip of land actually taken, but also damages to the rest of the land, the benefits that may accrue by reason of the construction of the railroad should be considered to offset the benefits against the damages to the residue of the land.  But the appellee is seeking compensation for all his property that is appropriated by the railroad corporation in the condemnation of that property for its right-of-way.  The property thus appropriated is the property that is actually affected.  It includes the property actually occupied by the right-of-way and the property that is in effect, though indirectly, taken by reason of the diminution of its value. The Constitution (article 12, § 9) and the statute (Kirby's Digest, § 2953) provides that the amount of damages to be assessed to the owner of lands in such condemnation proceedings shall be determined and assessed irrespective of any benefits that may be received from the improvement.

In the case of *Little Rock & F. S. Ry. Co.* v. *Allister,* 68 Ark. 600, it is said: "It follows, from the rule firmly established by these decisions, that the damages, which the statute says 'shall be determined and assessed irrespective of any benefit' the owner may receive from the road, include not only those for the land actually taken but all incidental damages to the remainder of the tract as well.  The statute makes no distinction between damages for value of land taken and damages to remainder of tract, but declares that the amount of damages to be paid the owner shall be determined and assessed without regard to benefits."  In the case at bar, therefore, the appellant is not entitled to diminish the damages that arise by reason of the land actually taken or to the residue of the land by any benefits received by the appellee on account of the construction of the railroad.

Complaint is made that the lower court permitted certain witnesses to testify relative to the value of certain lands in the neighborhood of these lands.  The testimony thus admitted related to lands similar to the lands included in this suit, or with explanations sufficient to show the difference between the market value of such lands.  This evidence was admissible by way of comparison, in order to show the market value of the lands involved in this litigation, and we find no prejudicial error in permitting the introduction of any of the testimony.

Complaint is also made of some remarks of counsel for appellee in his argument to the jury; but on examination of those remarks we find nothing that in our opinion gave any undue advantage to appellee; and therefore the argument was not prejudicial.

We have carefully examined the testimony in this case, the instructions given and the instructions refused, and we have found no error in the trial of the case that was prejudicial.

There was sufficient evidence to sustain the verdict of the jury in the amount of the damages which they assessed.

The judgment is affirmed.